# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
## AT CHATTANOOGA

UNITED STATES OF AMERICA,     )
     )
     Plaintiff,     )     Case No.  1:23-CV-306
     )
     v.     )     Judges
     )
0.5124 BITCOIN, ACCOUNT NUMBER     )
13970839, APPROX. VL: $12,003.20;     )
     )
9.992 EGLD, ACCOUNT NUMBER     )
13970839, APPROX. VL: $583.66;     )
     )
512720355 SHIB, ACCOUNT NUMBER     )
13970839, APPROX. VL: $6,178.28;     )
     )
790,832 DENT, ACCOUNT NUMBER     )
13970839, APPROX. VL: $854.05;     )
     )
21,461 USDT (TETHER), ACCOUNT     )
NUMBER 35484558, APPROX. VL:     )
$21,482.51;     )
     )
5,257 MATIC, ACCOUNT NUMBER     )
35484558, APPROX. VL: $5,036.67;     )
     )
20,983.067 USDC, ACCOUNT NUMBER     )
35484558, APPROX. $20,997.69;     )
     )
0.10644094 BTC, ACCOUNT NUMBER     )
35484558, APPROX. VL: $2,558.90;     )
     )
5,996 USDT (TETHER), ACCOUNT     )
NUMBER 13970839, APPROX. VL:     )
$5,991.14;     )
     )
4,560 MBOX, ACCOUNT NUMBER     )
36674597, APPROX. VL:  $3,063.74;     )

6,627 MATIC, ACCOUNT NUMBER
35484558, APPROX. VL: $5,690.33;                    )
                                                    )
14,048 USDT (TETHER), ACCOUNT                       )
NUMBER 39757394, APPROX. VL:                        )
$14,092.16;                                          )
                                                    )
0.5766 BTC (BITCOIN), ACCOUNT                       )
NUMBER 36674597, APPROX. VL:                        )
$12,161.72;                                          )
                                                    )
1,288.7 USDT (TETHER), ACCOUNT                      )
NUMBER 36944333, APPROX. VL:                        )
$1,292.70; AND                                      )
                                                    )
6,234.557 CAKE, ACCOUNT NUMBER                      )
36944333, APPROX. VL: $26,348.35,                   )
                                                    )
     Defendants.           )

## AFFIDAVIT IN SUPPORT OF VERIFIED COMPLAINT *IN REM*

I, Jared Olson, being first duly sworn depose and state as follows:

## INTRODUCTION

1.     I am a Special Agent with the Drug Enforcement Administration (DEA), and have

been since August 2015. I am a criminal investigator for the United States within the meaning of

Title 21, United States Code, Section 878, and therefore is empowered to conduct investigations

of, and make arrests for, the offenses enumerated in Title 21 and Title 18. Prior to becoming a

Special Agent with DEA, I received a Bachelor of Science Degree in Sports Management from

Cortland State University. Beginning in 2010, I was employed as a Border Patrol Agent (BPA)

for the United States Border Patrol for approximately five years. While employed with the

Border Patrol, I received 19 weeks of training at the Border Patrol Academy located at the

Federal Law Enforcement Training Center in Artesia, New Mexico, beginning in March 2010. While attending Border Patrol Training, I received instruction on enforcement techniques, custom and immigration law, drug identification, and federal criminal law.

2. After graduation, I was assigned as a BPA in Santa Teresa, New Mexico, and then in Erie, Pennsylvania. While assigned as a BPA, I was responsible for interacting with individuals who were smuggling drugs and people as well as self-initiated investigations, including traffic stops, immigration violations, interviews at the port of entry, drug crimes, and made numerous arrests for these crimes.

3. Beginning in August 2015, I received 20 weeks of training at the DEA Academy in Quantico, Virginia. While attending the DEA Academy, I received comprehensive instruction in investigative techniques, drug identification by sight and odor, methods used to package, market and consume drugs, drug testing, informant handling, evidence handling, surveillance, search and seizure, and the laws pertaining to drug investigations.

4. During the course of my law enforcement career, I have conducted investigations of human, drug, and weapon smuggling, as well as illegal immigration. I have participated in drug-related search warrants involving the seizure of controlled substances, documents associated with the sale of controlled substances, and proceeds from the sale of illicit drugs. I have personally interviewed confidential informants and persons involved in the distribution of illegal drugs.

5. I have participated in thirty one previous court-authorized wiretap investigations. I have acted as an affiant on six previous Federal court-authorized wiretaps. During the course of these investigations, my duties have included: case agent; affiant; monitoring intercepted telephone conversations involving principals and co-conspirators

involved in drug trafficking; conducting surveillance of members of these organizations; and executing search warrants.

6. I have performed various tasks during both wiretap and long-term investigations, including authoring affidavits for the interception of wire and electronic communications. I have also supervised the monitoring of line interceptions. I have authored numerous affidavits for telephone tracking, mobile tracking devices, and pen register trap and trace devices. I have also executed numerous search warrants, and seized and impounded illegal drugs, drug proceeds, and evidence of illegal drug trafficking activities during these investigations. I have also acted in a surveillance capacity during some of these investigations and have helped coordinate surveillance operations. I have performed toll analysis on telephone numbers during court-authorized wiretap investigations. Finally, I have spoken with suspects, witnesses, and cooperating individuals and informants about drug trafficking methods, and the distribution of illegally obtained money and assets.

7. During the course of my law enforcement career, I have conducted numerous investigations into drug distribution conspiracy; have participated in no fewer than 50 arrests of individuals for drug-related offense; and have participated in or authored no fewer than 300 drug-related search warrants.

8. Through training, experience, and conversations with other law enforcement personnel, I have become familiar with different techniques commonly used by traffickers to smuggle and safeguard narcotics, distribute narcotics, manufacture narcotics, and methods used to launder and smuggle drug proceeds. These techniques include the use of counter surveillance tactics to identify law enforcement presence, the frequent changing of telephones to avoid law enforcement exploitation, and the use of commercial banks and money remitters to funnel drug

proceeds from destination cities, back to Phoenix and ultimately to Mexico. Furthermore, I have developed knowledge in the utilization of cellular telephones, radios, text messaging via third party applications such as BlackBerry Messenger and WhatsApp installed on cellular telephones, and the use of fictitious identities by traffickers to avoid detection by law enforcement.

## PURPOSE OF AFFIDAVIT

9.      The Affidavit supports the civil forfeiture of the defendant properties set forth below (hereinafter "defendant properties"):

(a)     0.5124 Bitcoin, Account Number 13970839, Approx. VL: $12,003.20;

(b)     9.992 EGLD, Account Number 13970839, Approx. VL: $583.66;

(c)     512720355 SHIB, Account Number 13970839, Approx. VL: $6,178.28;

(d)     790,832 DENT, Account Number 13970839, Approx. VL: $854.05;

(e)     21,461 USDT (Tether), Account Number 35484558, Approx. VL: $21,482.51;

(f)     5,257 MATIC, Account Number 35484558, Approx. VL: $5,036.67;

(g)     20,983.067 USDC, Account Number 35484558, Approx. $20,997.69;

(h)     0.10644094 BTC, Account Number 35484558, Approx. VL: $2,558.90;

(i)     5,996 USDT (Tether), Account Number 13970839, Approx. VL: $5,991.14;

(j)     4,560 MBOX, Account Number 36674597, Approx. VL: $3,063.74;

(k)     6,627 MATIC, Account Number 35484558, Approx. VL: $5,690.33;

(l)     14,048 USDT (Tether), Account Number 39757394, Approx. VL: $14,092.16;

(m)     0.5766 BTC (Bitcoin), Account Number 36674597, Approx. VL: $12,161.72;

(n)     1,288.7 USDT (Tether), Account Number 36944333, Approx. VL: $1,292.70; and

(o)    6,234.557 CAKE, Account Number 36944333, Approx. VL: $26,348.35.

10.    Based on my training, experience, and background as a Special Agent for DEA and the facts set forth below, I believe the defendant properties are forfeitable pursuant to 21 U.S.C. § 881(a)(6), in violation of 21 U.S.C. §§ 846 and/or 841; 18 U.S.C. § 981(a)(1)(A), in violation 18 U.S.C. §§ 1956 and/or 1957; and 18 U.S.C. § 981(a)(1)(C), in violation of 18 U.S.C. §§ 1956, 1957 and/or 1343.

11.    The facts in this affidavit are based on my personal knowledge and information I have received from other law enforcement agents assisting in this investigation, my review of reports, documents, and other evidence obtained since the beginning of the investigation, as well as information related to me by other law enforcement agents. This affidavit does not contain all of the information known to law enforcement regarding this investigation.

## BACKGROUND

12.    Investigators with DEA Chattanooga, DEA Beijing, and Homeland Security Investigation ("HSI") Beijing have been investigating the distribution of fentanyl in Chattanooga, Tennessee and elsewhere. During the course of the investigation, an HSI confidential source ("CS") informed investigators that a website operating on the Clearnet (*i.e.*, the indexed internet accessible through publicly available browsers) – shanghaichemicals.com – was purporting the distribution of fentanyl worldwide. The CS appears to know this information based on what is advertised on the aforementioned website and conversations with an unknown person affiliated with the website.

## INVESTIGATION

13.    Investigators reviewed the website shanghaichemicals.co and found that the website advertises multiple controlled substances for sale including but not limited to: opioids,

benzodiazepines, cathinones, lysergmides, and tryptamines. Investigators found that the website allows for the purchase of these items without a prescription. The website indicates that the company is located in Beijing, China. However, investigators found that the website is hosted by Namecheap, a domain name registrar and web host based in Phoenix, Arizona. Other than advertising disposable masks and gloves for sale, it appears that shanghaichemicals.co is a website entirely dedicated to the illegal distribution of controlled substances. For example, screenshots of the website include:







Add to cart    ♡ Add to Wishlist

**Morphine**                    $125.00

## LATEST PRODUCTS





NEW ARRIVALS 2018



14. Investigators found that the website lists a Wickr[1] handle of "Shannon8080"[2] as a contact point for users to "GET IN TOUCH." Under the same "GET IN TOUCH" heading, the website also lists email address "globalconsultance0@gmail.com," and WhatsApp phone number, "+86 15067757303." WhatsApp is a cross-platform phone messaging application that allows users to send and receive text messages and voice calls. Drug traffickers commonly use WhatsApp to further their drug trafficking operation. WhatsApp communication is secure and encrypted, which

---

[1] Wickr is an end-to-end encrypted messaging application.

[2] Shannon8080 appears to be a pseudonymous moniker.

thwarts law enforcement investigative efforts.



15.     Investigators found that shanghaichemicals.co was registered to the name "Wickr

Shannon" with email address globalconsultance0@gmail.com, and phone number +86

15067757303.

16.     According to access logs for the Namecheap account affiliated with the operator

of shanghaichemicals.co, the IP addresses accessing the website appears to belong to Virtual

Private Networks ("VPNs").[3] Criminals use VPNs and other anonymizing methodologies to conceal their true IP address and attempt to avoid detection. It is believed that the account information related to the name of the account holder is fictitious and that it closely resembles the advertised Wickr moniker. It is common for bad actors to use fictitious names and monikers while conducting business online. This allows the individual(s) to conceal their identity to thwart law enforcement efforts.

17. In October 2021, investigators instructed the CS to contact Shannon8080 and order 130 grams of fentanyl from Shannon8080. The CS and Shannon8080 communicated via the Wickr application using the information featured on the website shanghaichemicals.co. Through that conversation, Shannon8080 told the CS that the CS could order 130 grams of fentanyl from Beijing, China, to the United States for $2,499.00. Shannon8080 further directed the CS to deposit the money into a US bank account at Branch, Bank and Trust ("BB&T") (now owned by Truist Bank). Shannon8080 provided the CS with the bank account number ending in 9276 in the name of Belinda Carroll (hereinafter "designated bank account").

18. In October 2021, a DEA agent working in an undercover ("UC") capacity, deposited $2,499.00 into the designated bank account located in Chattanooga, Tennessee. The purpose of that deposit was for the account holder of the designated bank account to transfer the money to Shannon8080 in exchange for the fentanyl shipment to Chattanooga, Tennessee.

19. Shannon8080 told the CS, via Wickr, that the money had been received into the designated bank account and that the fentanyl was being processed for shipment. However, Shannon8080 later told the CS that the US bank account holder converted the U.S. currency

---

[3] VPNs are a method of establishing a private network connection between devices. Effectively, this means that a user is accessing computers through the internet using an IP address that is not, in fact, the IP address assigned to that user's home network.

("USD") to Bitcoin ("BTC") and that, during the conversion, the $2,499.00 USD was reduced to $1,550.00 USD. Shannon8080 told the CS that the processing would stop unless the CS deposited an additional $790.00 USD. The CS negotiated the new asking price down from $790.00 to $500.00 USD, to which Shannon8080 agreed.

20.     To facilitate the additional $500 payment, on November 3, 2021, a DEA UC contacted Shannon8080 through Wickr. Shannon8080 provided UC with a BTC wallet address, bc1qwa… ("Wallet 1"),[4] and confirmed that the 130 grams of fentanyl would ship to UC after the BTC deposit to Wallet 1 was received. Shannon8080 told UC that after the BTC deposit was confirmed, a tracking number would be provided within twenty-four (24) hours.

21.     Per Shannon8080's instructions, on November 8, 2021, the UC transferred 0.00770000 Bitcoin from his UC wallet to Wallet 1. After completing the transfer, records show that the UC funds from Wallet 1 were transferred into two other wallets, 1FMDLn… ("Wallet 2") and bc1q7x… ("Wallet 3"). Wallet 2 is a Bitcoin wallet owned by Claudia Bimu NKWENTI on the Binance exchange, account number 38923124. Wallet 3 has no personal identification information available. On November 9, 2021, Wallet 3 transferred the UC funds received from Wallet 1 into Wallet 2.[5]

22.     In November 2021, a DEA UC received information pertaining to the email address listed as a contact for shanghaichemicals.co, globalconsultance0@gmail.com. Access logs for globalconsultance0@gmail.com indicate that from October 2021 to November 2021, globalconsultance0@gmail.com was accessed over 15,000 of times by various IP addresses.

---

[4] Given the length and complexity of the wallet addresses herein, this Affidavit references the first six characters of the wallet address followed by an assigned sobriquet (e.g., "Wallet 1").

[5] After this transfer, Wallet 2 was in possession of all $500.00 of the UC funds that were originally transferred into Wallet 1.

23.     On November 10, 2021, a DEA UC sent an e-mail to globalconsultance0@gmail.com. The email inquired about the UC 's order of fentanyl. As of the date of this application, UC has not received a reply from that e-mail address about the fentanyl.

24.     Further investigations revealed that Claudia NKWENTI, the named holder of Wallet 2, is a Cameroon National who has applied for a U.S. Visa. That application was denied by the Department of State due to concerns of overstaying and "weak ties to Cameroon." Claudia NKWENTI's sister, Edna NKWENTI is a legal permanent resident of the United States and resides in Oakley, California.

25.     In February 2022, Binance provided records related to Wallet 2, including access logs to the account belonging to Claudia NKWENTI. Those access logs provided IP addresses for each access to the account. Investigators determined that there were eighteen (18) identical IP addresses accessing both the globalconsultance0@gmail.com email account and Claudia NKWENTI's Binance account.

26.     A review of records pertaining to Wallet 2 revealed that from February 2021 to November 2021, there were approximately 4,878 deposits into Wallet 2, totaling nearly 76.52241178 Bitcoin.[6] Further, from March 2021 to November 2021, there were 759 withdrawals from Wallet 2 to other wallet addresses totaling approximately $3,575,238.71 worth of cryptocurrencies. Further review into Wallet 2 revealed that hundreds of the deposits were made in the cryptocurrency Bitcoin. After receiving the Bitcoin, the user converted the Bitcoin to Tether

---

[6] As of February 2, 2022, Bitcoin was valued at $37,478.60, down from the all-time high of about $68,000.00 in November 2021.

("USDT").[7] After the conversion, USDT was transferred from Wallet 2 to other cryptocurrency wallets. I know that cryptocurrency is often converted from one currency to another in an effort to conceal and launder money. Cryptocurrency also transferred quickly after its form is converted to further conceal and launder money.

27.     Between November 8 and 11, 2021, in addition to the funds received from Wallet 1 that the UC first deposited, Wallet 2 received 130 deposits totaling 2.1059897 Bitcoin. According to Binance records, Wallet 2 receives several deposit and withdrawal transactions each day. Those deposits are similar in amount to the Bitcoin deposited by the UC for the purchase of fentanyl. Investigators believe that the deposits are from other orders of illicit narcotics from the website, shanghaichemicals.co. After the Bitcoin was deposited, consistent with laundering techniques, it was quickly converted to USDT and withdrawn and transferred to other accounts.

28.     According to Binance records, on November 8, 2021, Wallet 2 converted the funds received from Wallet 1 to USDT, which included the Bitcoin deposited by a DEA UC.

29.     Investigators found that Wallet 2 co-mingled the original 0.00770000 Bitcoin received from Wallet 1 with other funds received. After co-mingling the funds and converting Bitcoin to USDT, Wallet 2 withdrew USDT from Wallet 2 on multiple occasions and transferred the proceeds to other cryptocurrency wallets. Between November 8 to November 12, 2021, Wallet 2 withdrew 115,491.08 USDT, transferring it into 19 other cryptocurrency wallets. Of those 19 wallet addresses, eight (8) wallets were managed by Binance.[8]

30.     One of the Binance wallets that Wallet 2 transferred USDT into was THM7Z2…

---

[7] Tether is a cryptocurrency that is hosted on the Ethereum and Tron blockchains. Tether has a 1:1 equivalent to the US Dollar.

[8] This Complaint references a wallet "managed by Binance," meaning, in this context, that it is a web-based wallet controlled by a user, but accessible and operated through the Binance online platform.

("Wallet 4"). Binance Wallet 4 is owned by Jude NEBA and managed by Binance, account number 39757394. Jude NEBA is a Cameroon national. Jude NEBA has applied for a U.S. Visa but was denied due to concerns about a possible overstay and weak ties to Cameroon. Jude NEBA has a cousin, Emelda SIRRINGWEN, who lives in Otsego, Minnesota.

31.    According to Binance records, Wallet 4 maintained approximately $27,287.00 worth of cryptocurrency in January 2022; given fluctuations in value of cryptocurrency, the dollar-equivalent value of the wallet varies daily according to the market price of the cryptocurrency. According to blockchain analysis, Wallet 4 made 8,783 transactions between March 21, 2020, and January 4, 2022. Those transactions total approximately $37,998,598.78 worth of cryptocurrency.

32.    Investigators also received access log information for Jude NEBA's Binance account. Those access logs contained the IP addresses that were accessing Jude NEBA's Binance account. Investigators found that 22 of the IP addresses that accessed the email account globalconsultance0@gmail.com (*i.e.*, the e-mail listed as contact info for the operators of the drug-dealing website shanghaichemicals.co) also accessed Jude NEBA's Binance account (Wallet 4). Of those 22 IP addresses, twelve (12) also accessed Claudia NKWENTI's Binance account (Wallet 2).

33.    Investigators also reviewed other Binance accounts into which Wallet 2 transferred cryptocurrency between March 11, 2021, and November 12, 2021. Investigators identified the following wallets as receiving funds from Wallet 2: TKtUf8…("Wallet 5"), a Binance account owned by Christian NWADISIA, account number 35484558; TNDKTL…("Wallet 6"), a Binance account owned by Aurelie KENMOGNE, account number 13970839; TVp2a7…("Wallet 7"), a Binance account owned by Wilfred EBOT, account number 36674597; TErv5i… ("Wallet 8"), a Binance account owned by Stone AKUM; account number 36959447, TXW7P… ("Wallet 9"), a

Binance account owned by Stalone MBUNA account number 55244423; TPZ2F… ("Wallet 10"),

a Binance account owned by Alain NYONGBELLA, account number 36944333; and TJeevu…

("Wallet 11"), a Binance account owned by Cedric FON, account number 35560857.

34.     The analysis conducted on Wallets 5 through 11 revealed that each of the accounts

conducted numerous transactions beginning around December 2017 and continuing through

January 2022.  In total, the aforementioned accounts conducted 77,573 transactions that totaled

approximately $448,812,212.08 USD worth of cryptocurrency transactions.

35.     The below graph illustrates the total amount of cryptocurrency and its USD

equivalent that is contained within each of the accounts, *i.e.*, the account's balance at the time of

seizure, January 3, 2022:[9]

| Account / Currency | Estimated BTC Value | Estimated USD Value |
|---|---|---|
| AURELIE CHRISTELLE DJOKO KENMOGNE | 1 | $60,306.00 |
| CHRISTIAN UCHECHUKWU NWADISIA | 2 | $57,543.00 |
| WILFRED BESON EBOT | 1 | $51,804.00 |
| JUDE AMBE NEBA | 1 | $27,287.00 |
| ALAIN TADOH NYONGBELLA | 0 | $8,598.00 |
| STONE WENJERI AKUM | 0 | $2,718.00 |
| STALONE NKEMBENG MBUNA | 0 | $1,090.00 |
| CEDRIC TIFUH FON | 0 | $5.00 |
| Grand Total | 5 | $209,351.00 |

36.     Investigators reviewed access logs for each of accounts affiliated with Wallets 4

through 11.  IP addresses accessing the globalconsultance0@gmail.com email address (*i.e.*, the e-

mail listed as contact info for the operators of the drug-dealing website shanghaichemicals.co)

---

[9] DEA uses the estimated monetary values at the time seizure since the monetary values fluctuate so frequently.

were also accessing each of the Binance accounts, that is Wallets 4 through 11, with one exception, the Binance account belonging to Christian NWADISIA (Wallet 5). However, investigators found that many of the IP addresses accessing Wallet 5 were also accessing all of the aforementioned Binance accounts, that is Wallet 4, and Wallets 5 through 11.

37.     On February 11, 2022, access logs related to the WhatsApp, number, 86 15067757303, the number listed in the "GET IN TOUCH" section of the website were received and reviewed. WhatsApp is a cross-platform centralized instance messaging and voice-over-IP (VOIP) service that allows text messages, voice messages, and video calls. I found multiple IP addresses accessing the WhatsApp account, were also accessing the email address, "globalconsultance0@gmail.com" and some of the Binance wallet accounts.

38.     Based on IP address patterns and access activity, it appears that a common source is acting as the "GET IN TOUCH" contact advertised by the drug-dealing website shanghaichemicals.co and accessing and controlling the wallets described herein. Additionally, investigators found that many of the IP addresses that are accessing the aforementioned Binance wallets are also accessing other Binance and Coinbase exchange accounts.

39.     The Wallets associated with the cryptocurrency addresses were held in Binance Holdings Limited, located in Grand Cayman, Cayman Islands.

40.     The pattern of withdrawals, transfers, and transactions is consistent with money laundering and attempts to conceal drug proceeds. Further, cryptocurrency is frequently used by criminals operating in the digital sphere as a medium of money laundering due to its pseudonymity and the perceived difficulties in tracing funds. I have conferred with Binance investigators who stated that it is common for money launderers to obtain Bitcoin and immediately convert the funds to another cryptocurrency, such as USDT, and to transfer to multiple other accounts in order to

attempt to attempt to "wash" the money and hide illicit funds. Furthermore, the movement of funds is indicative of concealment money laundering. The funds were moved from one account to others quickly and then the funds were converted to one cryptocurrency to another, further thwarting law enforcement efforts to track the funds.

41.     Bad actors sometimes utilize services to further obfuscate the movement of funds. A cryptocurrency tumbler or cryptocurrency mixing service is a service that mixes cryptocurrency funds with funds belonging to other individuals, so as to obscure the trail back to the fund's original source. When cryptocurrencies are tumbled or mixed, the mixer will take the cryptocurrency from several different users and run them through an algorithm that mixes those funds together, and then redistributes them to the users. For example, one hundred users send 0.1 bitcoin to a new address, aggregating those funds into one big transaction. The funds are subsequently distributed among the hundred users, each of them receiving 0.1 "clean" bitcoin. As a result, tumbled or mixed cryptocurrencies lose many of the attributes that make cryptocurrencies traceable. There does not appear to be a legitimate reason for this type of activity. The conversion to USDT creates a 1:1 ratio to the US Dollar. After converting the USDT, the accounts transfer to several other accounts without withdrawing the funds. This method of concealment further illustrates that the funds were laundered and the account holders intended to conceal the funds and make it difficult to trace where all of the funds were transferred.

42.     It is also possible for owners of cryptocurrencies to exchange or covert one cryptocurrency to another (*i.e.*, converting Bitcoin to Tether) and then sending the new cryptocurrency to other wallet addresses. Converting and sending the cryptocurrency to other wallets thwarts investigator's ability to trace the movement of funds which leads investigators to believe that the money was laundered by concealment.

43.     In this case, Wallet 2 and other Wallets received funds obtained by virtual currency transfers that occurred after an attempted undercover purchase of fentanyl. During that transaction, UC investigators transferred Bitcoin to a wallet address provided by an unknown co-conspirator. After the transaction, the funds were transferred to another virtual currency wallet owned by Claudia NKWENTI in Wallet 2. Wallet 2 then converted the Bitcoin to USDT and transferred that virtual currency to multiple other wallet addresses, owned by other individuals. While reviewing the Binance account for Claudia NKWENTI, investigators found thousands of deposits from February 2021 through November 2021. All of the deposits were in Bitcoin and all were for amounts ranging from a few hundred dollars to a few thousand dollars. These amounts are similar to what the amount would be if a customer purchased the products listed on shanghaichemicals.co. Investigators found over 5,000 of such deposits into the wallet. These small deposits totaled approximately 76.52 Bitcoin, which as of February 9, 2022 is approximately $3,398,888.32 USD. Law enforcement placed a UC order of drugs advertised on the website shanghaichemicals.co and sent funds to Wallet 2 at the website operators' instruction; however, law enforcement never received the drugs that were ordered and paid for. Accordingly, I believe that, in addition to the potential sale of illicit narcotics, this website may be involved in fraudulent activity, i.e., advertising drugs for sale, accepting payment for the notional drugs, but never sending the product ordered.

44.     The accounts were seized and are in the custody of the United States Marshals Service. The defendant properties are subject to forfeiture to the United States in accordance with 21 U.S.C. § 881(a)(6), 18 U.S.C. §§ 981(a)(1)(A) and 981(a)(1)(C).

## **CONCLUSION**

The United States of America seeks forfeiture of the defendant properties pursuant to 21

U.S.C. § 881(a)(6), in violation of 21 U.S.C. §§ 846 and/or 841; 18 U.S.C. § 981(a)(1)(A), in

violation 18 U.S.C. §§ 1956 and/or 1957; and 18 U.S.C. § 981(a)(1)(C), in violation of 18 U.S.C.

§§ 1956, 1957 and/or 1343.

FURTHER THIS AFFIANT SAYETH NOT.

Jared Olson, Special Agent
Drug Enforcement Administration

STATE OF TENNESSEE

COUNTY OF Hamilton

On this 8th day of November, 2023, before me, personally appeared Jared Olson,
in his capacity as a Special Agent with the Drug Enforcement Administration, to me known to be
the person described in and who executed the foregoing instrument, and acknowledged that he
executed the same as his free act and deed.

IN WITNESS WHEREOF I have hereunto set my hand and Notarial Seal.

Subscribed to and sworn before me on this this 8th day of November, 2023.

NOTARY PUBLIC

My Commission Expires: May 24th 2027

KAYLA ALLEN
STATE
OF
TENNESSEE
NOTARY
PUBLIC
COUNTY OF HAMILTON
MY COMM. EXPIRES MAY 24TH, 2027